UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID R. PUCKETT, ) | CASE NO. 1:13 CV 310 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OF OPINION |
| A. SELVAGE, et al., ) | AND ORDER |
| ) | |
| Defendants. ) | |

*Pro se* plaintiff David Puckett, an inmate at the Mansfield Correctional Institution ("ManCI") filed the above-captioned action under 42 U.S.C. § 1983 against ManCI Unit Manager Amanda Selvage, ManCI Investigator A. Hunsinger, ManCI Education Department Instructor C. Essenmacher, ManCI Education Department Principal S. Phillians, and ManCI Rules Infraction Board ("RIB") Chairman Lieutenant Dalby. (Doc. # 1). In the complaint, plaintiff alleges retaliatory transfer by Selvage to a limited privilege housing assignment, Hunsinger's mishandling of an investigation into a conduct report filed by Essenmacher, deprivation of plaintiff's right to due process by RIB Chairman Dalby, and selective enforcement regarding Phillians selection of inmates for tutoring positions at the prison high school in violation of institution policy. Plaintiff seeks declaratory and injunctive relief and monetary damages. For the reasons below, this action is dismissed pursuant to 28 U.S.C. § 1915(e).

**I. Background**

Plaintiff alleges that, on Sunday, November 11, 2012, while he was attending religious services, Hunsinger ordered a "shakedown" or search of his cell and living area. He asserts he never received any confiscation or contraband documentation, but learned later that day from Lieutenant Swisher that various items of contraband had been confiscated.

On November 13, 2012, plaintiff reported to his institutional job assignment as a tutor at the prison high school, but Correction Officer S. Lee refused to allow him to enter the building. Lee directed plaintiff to return to his pod and told him that he could expect an explanation from his supervisor, J. Hendershott. Upon returning to his pod, Correction Officer Redman indicated that Hendershott had called and requested that plaintiff turn in his identification.

The next morning, Unit Sergeant K. Werner summoned plaintiff to his office and informed him that school instructor Essenmacher had written a conduct report, dated November 13, 2012, charging plaintiff with attempting to establish a personal relationship with staff and disobedience of a direct order in violation of institutional rules. In the conduct report, Essenmacher stated:

> On [November 6, 2012], I/M Puckett came into my classroom (from Hedershott's class) and made inappropriate comments about what other inmates were saying about me back in the units, such as 'I heard you bring in cigarettes Ms. Essenmacher and that you give them to certain inmates out of your desk drawer' and that 'you like black inmates better than white inmates.' I told Henderschott [*sic*] what Puckett said and also Wareham, warning them both that I felt this inmate was trying to establish a relationship with me. The next day Puckett came into my room trying to apologize about his comments. I warned him that I would write him up for trying to establish a relationship if he ever talks to me or comes into my class again while he's in school. On Friday (11/09/12) I/M Puckett walked up behind me while I was standing by Wareham['s] door and told me to 'have a nice weekend,' disobeying a direct order.

(Doc. # 1-2 at 2). Werner told plaintiff that this was the reason for the search of plaintiff's cell and living area. Plaintiff entered a response of "not guilty" to the conduct report, and Werner forwarded the report to the RIB for a hearing.

-2-

Plaintiff also received a letter that day from Hendershott dated November 13, 2012, relieving him of his duties as a tutor. (Doc. # 1-2 at 3). Case Manager Lindsey Jacobs then issued a job change to plaintiff, reassigning him as a porter. (Doc. # 1-2 at 4).

On November 15, 2012, Selvage and Jacobs conducted a class/level review to determine whether plaintiff should have his security level raised or lowered. Jacobs informed plaintiff the next day that he was being moved from a 3A pod to a limited privilege housing assignment in a 3B pod. Plaintiff did not request an appeal of the transfer. (Doc. # 1-2 at 5, 10-11).

Plaintiff contends his transfer violated Ohio Admin. Code § 5120-9-09 because he had not yet been found guilty of any rule violation by the RIB and had not appeared before a classification committee. Further, he alleges his transfer to limited privilege housing was in retaliation for his use of the grievance process and for his "writing Warden T. Tibbals referring to the acts of retaliation and the discriminatory practices against petitioner." (Doc. # 1 at 5). He also asserts that Selvage "had previously threatened petitioner if he continued to participate in a protected activity as designated by the U.S. Dist. Court and American Corrections Association, (The Grievance Process) MANCI-10-12-000070." (*Id*.).

On November 24, 2013, plaintiff sent a "kite" to Hunsinger requesting an interview regarding Essenmacher's "allegations of bringing or introducing contraband into a Correctional Facility[] and establishing inappropriate relationships with certain inmates . . . ." (*Id.* at 6). Plaintiff contends that Hunsinger never responded to his inquiry and "assisted in a cover up by mishandling . . . the process." (*Id*.).

The RIB held a hearing regarding Essenmacher's conduct report on December 5, 2012. Plaintiff asserts that thirteen working days had passed since the filing of the conduct report in

-3-

violation of the time frame established by Ohio Department of Rehabilitation and Corrections ("ODRC") policy. He further asserts that during the hearing Jacobs interrupted his rendition of the events and asked him to step out of the room. When he returned to the hearing, Chairman Dalby, instructed him to return to his living area, telling plaintiff that he would hear from him later and not to "worry about it." (*Id*.).

On December 13, 2012, plaintiff received notice by mail that the RIB had dismissed all charges and referred the matter back to the hearing officer, Sergeant Davis. On December 21, 2012, however, Correction Officer Sevits told plaintiff that although the RIB had found plaintiff not guilty of charges in Essenmacher's conduct report, the Board had recommended that Davis find plaintiff guilty of a lesser charge, disrespecting a staff member, and that Davis impose a 30 day phone restriction on plaintiff. Plaintiff contends he did not receive a copy of the Board's disposition and did not thereafter receive a hearing before Davis on the lesser charge. He alleges this was a denial of his due process rights under the Fourteenth Amendment.

Finally, plaintiff contends that Phillians, the principal of the prison high school, knowingly allowed "3B [privilege] inmates to work in the school in violation of policy, and also allow[ed] inmates who [were] not even assigned by class to work in the classroom as tutors, [and that] this constitutes selective enforcement." (*Id*. at 7).

On February 2, 2013, plaintiff filed the instant action pursuant to § 1983. He seeks a declaration that only "3A inmates" are permitted to work in the Education Department, as well as $50,000 in compensatory damages, $5,000 in punitive damages against Hunsinger, Selvage and Essenmacher, $60 in lost state wages, and return to his institutional job assignment as school tutor. (Doc. # 1 at 8). On March 25, 2013, plaintiff moved for appointment of counsel. (Doc. # 6).

## II.  Motion for Appointment of Counsel

A district court has discretion to appoint counsel for an indigent civil litigant.  28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."); *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) ("The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be overturned only when the denial of counsel results in fundamental unfairness impinging on due process rights.") (citations and internal quotation marks omitted).  "Appointment of counsel in a civil case is not a constitutional right. . . . It is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (citations and internal quotation marks omitted).  "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'" *Id.* at 606 (citing *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)).  "This generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Id.* (citing *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)).  "Counsel should not be appointed pursuant to 28 U.S.C. § 1915(d) where a *pro se* litigant's claims are frivolous, . . . or when the chances of success are extremely slim." *Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011) (internal citations and quotation marks omitted).

Upon careful consideration of plaintiff's motion, the type and nature of this case, its complexity, and plaintiff's ability to prosecute his claims, the Court concludes that counsel is not necessary at this time to insure that plaintiff's claims are fairly heard.  *See Reneer*, 975 F.2d at 261. Accordingly, plaintiff's motion for appointment of counsel is denied.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking § 1915(e) and is dismissing the claim for one of the reasons set forth in the statute. *Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 915 (6th Cir. 2007); *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 261 (6th Cir. 1990); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986).

The Court in *Iqbal* further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Analysis

Plaintiff's complaint is divided into four separate "claims." (Doc. # 1). Although plaintiff does not set forth specific constitutional bases for each of his claims, the Court construes the complaint as seeking to assert retaliation in violation of the First Amendment, as well as violations of due process and equal protection. Even construing the complaint liberally in a light most favorable to plaintiff, however, it does not contain allegations reasonably suggesting he might have a valid federal claim. *See, Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996) (court not required to accept summary allegations or unwarranted legal conclusions in determining whether complaint states a claim for relief).

**A. Retaliation**

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988). To state a claim for retaliation, plaintiff must allege facts showing: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that

conduct; and (3) there is a causal connection between elements one and two, that is, the adverse action was motivated at least in part by plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

An inmate has a First Amendment right to file grievances against prison officials. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). To state a constitutional claim, however, plaintiff must not only show he exercised this First Amendment right, but must also demonstrate that adverse actions were taken against him, which were motivated, at least in part, by the grievances he filed. *Thaddeus-X*, 175 F.3d at 394. Plaintiff contends that following Essenmacher's allegations of misconduct, he was subjected to a security class/level review by Selvage, which resulted in his transfer to limited privilege housing. Plaintiff's allegations of retaliation and a previous threat by Selvage, however, are vague and wholly conclusory. He offers no factual allegations that reasonably suggest his housing reassignment was based upon an intent to retaliate against plaintiff for filing grievances, as opposed to being based on the conduct for which he was charged and, therefore, he fails to state a claim for retaliation.

**B. Due Process**

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is reached only if the inmate establishes the deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause alone does not confer a liberty interest in freedom from state actions within the sentence imposed upon the inmate. *Sandin*, 515 U.S. at 480. "Discipline by

-8-

prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. There is no general liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221. A prison disciplinary proceeding therefore does not give rise to a protected liberty interest unless the restrictions imposed as a result of the hearing constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Plaintiff fails to state a claim for violation of due process. There are simply no allegations to support a conclusion that he might have been subjected to the imposition of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life[,]" *id.,* by virtue of his transfer to limited privilege housing, his job reassignment, or imposition of a 30 day phone restriction. Moreover, plaintiff does not have a federally cognizable liberty interest in a particular job assignment while incarcerated. Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb.14, 2001) (prisoner has no constitutional right to rehabilitation, education, or jobs); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Molina v. Wilkinson*, No. 96-3127, 1996 WL 678226, at *2 (6th Cir. Nov. 21, 1996) (prisoner has no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs"); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment). Accordingly, for all the foregoing reasons, plaintiff's due process claims are dismissed.

**C. Equal Protection**

The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To demonstrate that he was "similarly situated" to other comparable employees, plaintiff must show that "all of the relevant aspects of his employment situation were 'nearly identical' to those of [a comparable worker's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (emphasis in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Further, the equal protection clause does not require absolutely equal treatment of all similarly situated persons, or the absolutely equal division of governmental benefits. *Ross v. Moffitt*, 417 U.S. 600 (1974). In the absence of a deprivation of a fundamental right or deprivation based on a suspect classification, equal protection requires differing governmental treatment of groups or individuals to be based on no more than a rational relationship to a legitimate state purpose. *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Because a fundamental right is not implicated in this case and plaintiff does not allege that he is a member of a suspect class, the decision to deny plaintiff a job assignment as a tutor need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

Plaintiff fails to state a claim for violation of equal protection. Plaintiff alleges that he was removed from his job assignment in the education department, while other 3B privilege level inmates were allowed to work in the school in violation of policy. However, plaintiff fails to provide any specific factual allegations from which it can be inferred that he is similarly situated

to other 3B inmates permitted to work as tutors in all relevant respects, such as identifying prisoners who were also charged with rule violations, but did not lose their educational job assignments as a result. Nor has plaintiff alleged that defendants purposefully discriminated against him. Defendants' failure to follow prison policies is not sufficient, by itself, to state a claim. *See Clark v. Johnston*, 413 F. App'x 804, 818 (6th Cir. 2011) (dismissing class-of-one equal-protection claim alleging that prison officials selectively enforced prison rules). Therefore, plaintiff's allegations on this point are wholly conclusory and fail to state a claim under § 1983. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

**D.  State Law**

Plaintiff contends that defendants violated Ohio Administrative Code provisions and ODRC policies. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94–23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because a policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Laney*, 501 F.3d at 580–81.

Moreover, to the extent that plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No.

97–1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted,* 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

### IV. Conclusion

Accordingly, plaintiff's motion to proceed *in forma pauperis* (Doc. # 2) is **GRANTED**, plaintiff's motion for appointment of counsel (Doc. # 6) is **DENIED**, and this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e).[2] The Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

**IT IS SO ORDERED**.

    S/Dan Aaron Polster
**Dan Aaron Polster**
**United States District Judge**

April 16, 2013

---

[2] Plaintiff's motion for an order allowing him to submit a reduced number of copies is **DENIED as MOOT**.

[3] 28 U.S.C. § 1915(a)(3) provides, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."